Case number 22-1318 Michael Muir Petitioner v. United States Department of Homeland Security and Transportation Security Administration Mr. Weaver, amicus curiae for the petitioner, Mr. Muir for the appellant, Mr. Waldman for the defendant Mr. Weaver, you may proceed when you're ready Judge Miller, Judge Childs, Judge Randolph, and may it please the court, Will Weaver, amicus arguing in favor of petitioner, I'd like to reserve two minutes for rebuttal. TSA's final rule adopting AIT and the standard operating procedures requiring the AIT plus pat-down regime at airport security checkpoints failed to address a significant aspect of the problem before the agency. That for a certain category of individuals, those with internal disabilities or hidden medical conditions that are hidden from view, the AIT plus pat-down procedures prevent them from reliably and safely completing TSA screening to access commercial air travel in the United States. The standard operating procedures that require AIT plus a pat-down prevented petitioner Michael Muir from accessing his flight in December 2022 and the TSA's application of those procedures to Mr. Muir were both arbitrary and capricious and violated the Rehabilitation Act. TSA's frequent use of alternative screening procedures, namely walk-through metal detectors, shows both why the application of standard operating procedures to Mr. Muir was arbitrary and also why providing Mr. Muir an accommodation similar to walk-through metal detectors would not constitute an undue burden for the government under the Rehabilitation Act. For the first part on the fail to address a specific aspect, did you forfeit the statutory challenge with respect to the AIT and the ATR argument? Judge Childs, amicus did not address the statutory argument in its briefs. But Mr. Muir did. That's correct, Judge Fuller. Why isn't the 60-day deadline in 49 U.S.C. 46-110A bar Mr. Muir's claim? It's brought far after the order at issue here, which I take it to be the standard operating procedures. Judge Pillar, that's right. And I'd say a few things about that. The first is that the standard operating procedures are nonpublic. So Mr. Muir's petition was brought within 60 days of the application of the standard operating procedures to him on December 1st, 2022. The other thing I would say, this court has held that the 60-day time period is not jurisdictional in the Bonacci case. And that isn't an argument that the government has pressed that his claim is time barred. And I would say that's particularly the case with respect to the aspect of his challenge that is to the standard operating procedures. There's a fundamental mismatch between the security rationale that the government offers to justify denying AIT alternatives to individuals who have internal disabilities or medical conditions that are hidden from view, and the numerous other circumstances in which it does allow for AIT exceptions. And that includes travelers who are traveling with small children, passengers who are traveling with pets, passengers who are traveling with service animals, passengers with pre-check, passengers who are traveling in wheelchairs, and all passengers that are flying out of the 15% of airports in the United States that are not equipped with AIT. In all those situations, I mean, what the government argues is it's really straightforward for a TSA operative to see if someone's with small children, a service animal, a pet, in a wheelchair, and in the airports where they don't have the AIT. There's no discernment needed as between people who would be eligible for the metal detector or would go through AIT. So, I mean, one of the main things they say, which is, you know, part of the challenge for Mr. Muir is that, you know, there are millions of people going through these checkpoints every day, and they can readily administer sorting that is based on easily apparent characteristics. Judge Pillard, with respect to the administrability question, amicus would point to – the government is correct that in some of these circumstances, there is a sort of easy visual identifier. But amicus would point to, for example, for service animals and pets, there are forms that can be filled out under penalty of perjury that someone who wants to travel with a service animal or someone who had an internal disability or medical condition could fill out, again, under penalty of perjury, submit to the TSA, and they could be issued some sort of documentation that would allow them to immediately be identified as someone that needed to go through a walk-through metal detector. And amicus would submit that that would not constitute some kind of far-reaching burden on the government, as the government suggests in its briefs. You said that's also for people with disabilities? Yes, Judge Pillard, that was correct. Fill out the form, and then they can go through a different – like, if you have metal implants, then you fill out the form and you go through AIT? Judge Pillard, I'm not sure if that – the form I'm referring to here is the one that applies for if you were traveling with animals. I'm not sure the precise – I thought you said animals and something else. Apologies. I mentioned both. I was saying the same type of regime that sort of applies if you're traveling with animals could apply in a similar circumstance. You could have a one-pager that the traveler fills out, and then the TSA looks at that and issues some kind of documentation that they could readily identify. Just as a matter of information, I know this may be in your brief, but there's a lot of subcategories. If you're traveling with an animal and you don't go through AIT because it won't work keeping you together with the animal and going through AIT, you go through a metal detector. That's my understanding, Judge Pillard. And you're subject to routine pat-down as well, or no? There are – it's Amicus's understanding that you can be subject to a pat-down at any point, but certainly if you go through a metal detector as well as going through AIT. Petitioner's particular problem in this case and what gives rise to the challenge is that for him, his – I understand. I guess I'm – maybe these are just questions for the government because it's a little bit unclear when metal detector is routinely accompanied by pat-down and when it might not be. But I'll ask the government about that. I was going to say, too, kind of in telling this story, it seems like that we're left without certain of the details that appear about what happened. You know, once plaintiff goes to the TSA gate, you give your boarding pass, you give your ID, and then we just kind of don't know what's happened after that with respect to, you know, did he go through the AIT machine? Does he – does the machine alert? Does the officer attempt to pat down? Does he alert every time that he goes through machines and things like that to kind of give us some sense of what does he really need, you know, or is it better for him to have just got out a TSA pre-check form so that he doesn't have to go through this particular machine? Yes, Judge Charlton. And so I would say that within the record and with the declaration that's attached to the briefs, amicus' take on that is that there are – for Mr. Muir, the potential that he ends up with an extremely painful pat-down is substantially increased going through AIT. And so for purposes of standing, that meets the New Jersey EPA. But in terms of the – you know, there's a way to read the declarations that there seems to be some sort of, you know, factual question there. But with respect to petitioner's claims, it's amicus' position that it doesn't matter precisely at what point on December 1st, 2022, he was prevented from going through the machine, whether he stepped into the machine or did not. It isn't really relevant to the question of whether he has standing to challenge the standard operating procedures and bring his claims. And I would also just point out that the government – the evidence that the government put in on that, the Sebastian declaration, is not conclusive, you know, on the question either. So there is perhaps a factual dispute. There's two machines that you go through. I mean, if you have TSA pre-check, you go through a certain machine. And then if you don't have TSA pre-check, you go through the other machine that requires you to put your hands up, and then there's a scan around you. And so it kind of matters of whether or not he alerts, you know, with respect to going through one or either of those machines. Judge Shelton, I'm not sure. I want to make sure I'm addressing your question. My understanding is that because the AIT falsely identifies petitioner's hernia as a threat object, that's sort of what causes the substantial increase in likelihood that he's going to have to endure the pat-down. And so he needs a circumstance where he can arrive and know that he's going through a metal detector and not the AIT machine. So what is the accommodation or range of potential accommodations that he's raising? I know he wants to not go through AIT, instead go through a metal detector. And the reason I was asking about whether people who are routed as a routine matter through metal detectors, not because the airport only has that, but because, for example, if they're with a service animal or they're over 75 or what have you, whether those people are routinely patted down. Because if they are, that's not an accommodation at all. So what is the accommodation that you understand, Mr. Muir, to be asking for? The accommodation, from Amicus's perspective, is access to the walk-through metal detector. Because even though in some circumstances there may still be a pat-down, the chances of that occurring is substantially decreased because his hernia would not register the walk-through metal detector in the same way that it registers as a threat object on the AIT machine. And is that the same one that the TSA people, excuse me, the pre-check people go through? That's my understanding, Judge Childs. I'm not sure that it… …the TSA pre-check prerequisites to get that type of card. Well, Judge Childs, I would say two things about that. With respect to the Rehabilitation Act claim, I do think the fact that TSA pre-check does cost money, right? There's a cost associated with it. And it's also the requirements of pre-check are not designed for individuals with disabilities. There are requirements and background checks and other things that just aren't germane to that issue. But isn't there an ability to indicate ahead of time whether there's a card or some kind of medical documentation so that you kind of have that confidentiality or sensitization that you would go through to an officer ahead of time that you could fill out? I think there is. There's a card and there is a hotline. And what I would say about that is I… …however that operates here, and there's not a lot in the record about, you know, whether that was at issue for petitioner, but the TSA is a party to this case. I think that they could have said in the briefs, you know, if Mr. Muir were to dial that hotline or fill out the card, then he would have access to a walk-through metal detector. And from Amicus's perspective, because the government hasn't made that argument or assertion, that whatever, you know, the regime that exists with the hotline and the card isn't sufficient to ensure that Mr. Muir can go through the walk-through metal detector as opposed to… Speaking of not making an argument, you were appointed by the court. You don't represent the petitioner. That's correct, Judge Randall. How can it be, then, that you can raise arguments that the petitioner hasn't made? You don't have any standing whatsoever to do that. Judge Randall? Well, the business about comments and the failure of the agency to respond to comments during the rulemaking, Mr. Muir doesn't raise that. Well, Judge Randall, I would say in the petition he does raise a challenge to the rule and I think fairly read to the standard operating procedures that implement it. He doesn't raise the argument that I just said. He is not discussing his petition. So on what basis should we even consider that? Well, Judge Randall, he does invoke section 46110, and the court's review under that is under an arbitrary and capricious… The 60-day rule we've held is not jurisdictional, but we've also held that the portion of sub D requiring an objection before the court will consider it an objection before the agency is jurisdictional. And if there was no question about or no objection along the lines of anything that you're arguing, then I don't see how you can possibly argue it. Well, Judge Randall, we do discuss that. Amicus discusses that in the briefs as well. So there are – and the court asked Amicus to address the question of Vaughn and Olmstead and how they interpret the statutory provision you're discussing. I think there's no – to me, it's very clear that the sort of – the Vaughn holding is correct here, which is just to say that as long as comments were raised by someone during the rulemaking – – issues that are, Amicus would say, in the same category and similar to Mr. Muir's, which is folks with internal disabilities or medical conditions that would present a problem for screening. So I would say two things to address the question about 46110D. The circumstances in the Olmstead case, which is the older case where the court did hold a party to require them to have made the same arguments before the agency. That case involved attorneys for – I believe it was a municipality, and the attorneys had been involved in the initial agency process and raised other arguments, failed to raise an argument that they then later raised. And so there they were held to – or the court said that in that case, it needed to have been the party that was later arguing the issue that also raised it before. The provision that I'm talking about in the portion of D, sub D, they have to raise an objection before the agency, and if you don't, then the court can't consider it, is common throughout administrative agencies. Common provision, and the Supreme Court has held that the government – even the government can't waive that. There's a case called EEOC versus FLRA that the Supreme Court decided, and the government did not say, hey, you didn't object. The Supreme Court said, you can't waive that. It's for the protection of the court. It's a sufficiently light jurisdiction that we're not going to allow the government to waive, forfeit, waive, whatever you want to call it. That's a pretty strong rule. So I guess the question is, you do point to – or maybe it was Mr. Muir who points to comments on the final rule that raised a question of hidden disability and other comments that raised questions, I think, about possibly hazardous pat-down. But what's tricky and distinct about Mr. Muir's situation is the combination of those two things. And I don't think that there's any comment that raises a situation really analogous to his that presents the difficulty of accommodation that his case presents. Is that right? Judge Pillard, amicus would agree at that level of specificity that that is not raised in the comments. The other thing that I would say, though, with respect to – the 46110D issue is a question and it's an issue with respect to the aspect of the challenge that is to the final rule. But it's not with respect to the challenge to the standard operating procedures that implement this AIT plus pat-down regime, which is sort of the core – I think the petition read fairly. That's the core of the challenge. The final rule doesn't lay out in detail all of the ways in which TSA is going to administer AIT. That happens in the standard operating procedure. That is a document that is not public, and it is one that was applied to the petitioner in December 2022 right before he raised this challenge. So the 46110D issue isn't an issue with respect to his challenge to the standard operating procedures. Because those are not notice of comment rulemaking. Right, and there would have been no opportunity to raise – To go back to a point that Judge Childs made, which is that if he had put up the $75 and got cleared through the pre-check, he would not be going – he would be going through a metal detector, wouldn't he? I think in most cases – I think in almost all cases, that's correct. Why isn't that an accommodation? That would be an accommodation, but under the Rehabilitation Act, because there is a charge for that and because it is a program, it isn't really germane to the issue of individual fees. There's a Supreme Court case that, for lack of a better description, held that you can't be too poor to declare bankruptcy. When you declare bankruptcy, you have to pay a court filing fee. And there was a claim that that was unconstitutional and discriminatory and so on and so forth. Do you know this case? Not off the top of my head, Judge Reynolds. So the Supreme Court upheld the filing fee. And there was a newspaper report of the case, and in the newspaper report, it said what happened after that is that the plaintiff in that case paid the filing fee. You said that – I'm sorry. If I can find that case, then I will. I mean, doesn't that sort of undercut your argument? Well, this is terrible because he's got to pay $75 for five years of free check. Well, Judge Randolph, I would say under the Rehabilitation Act, while Amicus doesn't have a case that's specifically on all fours, I do think the American Council for the Blind case and the rationale laid out there discusses the idea that it can't be the case that just because there would be a way for an individual who otherwise had a Rehabilitation Act claim to obtain access if they were to spend a lot of money to do so, that can't be enough for the government to deny access under the Rehabilitation Act. What happened to that case on remit? I'm sorry? What happened to that case on remit? I believe that it was – it did not go in favor of the plaintiff in that case. Just to get a clearer sense of what is the accommodation that's being sought, you said it's to go through a metal detector, presumably without any supplemental requirement that you'd be routinely subject to a pat-down as part of going through the metal. That's right, Judge Pillar. So taking the chance that you might, if something alerted, but I gather Mr. Muir thinks, I'm going to take all of my metal buckles and watches off, so I'm not going to alert it and that that's going to be fine. I would say, Judge Pillar, at the very least, I do think, you know, amicus could imagine other accommodations that went further than that, that perhaps for individuals that have this problem also gave them an accommodation for those, you know, fewer circumstances where they went through a walk-through metal detector and then also needed to be patted down. It's just really difficult to assess and to ask the government to assess is this presenting an undue burden if we don't know what the it is. And I know that what's being required is challenged as under the Rehabilitation Act, but to know what would be an acceptable regime, especially from those that already exist, would be helpful. For example, you objected to the money, had some back and forth with Judge Randolph about that. What if the government said, OK, we're going to waive the fee or if we held that's not, that's de minimis, you know, 15 bucks a year for five years? Then would that the treatment under pre-check, which sounds like it's exactly what Mr. Muir wants, which is get routed to the metal detector as as an ordinary thing without deluxe pat-down supplement, is that an accommodation that would be sufficient? And we can ask Mr. Muir if this is not something I know you're not counsel, so I was going to say that's part of the challenge is that question of, like, I don't want to speak for the petitioner on what would be sufficient. But from amicus perspective, and I think what we laid out in the briefs is the idea that what I hesitate to agree with there is, like, I'm not entirely sure that even with the fee waived, TSA pre-check would would lead to that outcome. And part of that is just I don't actually know if TSA pre-check in all cases routes you through the metal detector. So I don't want to speak to that. We shouldn't be asking you. I can ask Mr. Muir and I can ask the nature of the pre-check of the government. All right. Thank you. Thank you. And we will hear now from Muir. Morning. Thank you, Judge Childs, Judge Miller, Judge Randolph. May it please the court. I'm here today to discuss three orders that were made by the special panel in this case and how they relate to the advanced technology and the ultimate relief that my petition seeks. First was the December 7th, 2023 order directing parties to address 49 U.S. Code 46110D. And I think to your question earlier, Judge Childs, I have satisfied the jurisdictional requirement because contrary to respondents assertion at their answering brief page 41, previous objections raised during the notice on the proposed rulemaking allow my statutory challenge because my declaration at Joint Appendix 112 mirrors previous comments by other commenters at Joint Appendix 55, 60, 160, and 163. And then also those are listed at my brief at page 2. And if general objections about disabilities satisfy section 46110D, then I would say general objections about the ATR software also satisfy that requirement. And that's at Joint Appendix 160 that the ATR software is raised. Second would be the June 10th, 2024 order allowing me to raise OMB memorandum M-24-10 as it relates to the ultimate relief my petition seeks. And I would say there that on December 16th, 2024, the respondents identified the ATR software as artificial intelligence. And that's at Joint Appendix 312. And I believe it's identified as DHS-131. And that's at row 152 of the spreadsheet. So the court can be confident that this is artificial intelligence that they're dealing with. And then third would be an order related to a motion that is still pending. And that's the motion to supplement the administrative record. The order on July 10th, 2023 referred that motion to this panel. And I would say that the Joint Appendix from page 206 to 275 should be considered because the advanced imaging technology manufacturer, Leidos, was just granted a $102.6 billion DHS contract on January 2nd of this year for integrated logistic support for the TSA security detection systems equipment. So I believe that their attorneys' comments on the real-world functioning of the equipment apply here. Can I ask you, Mr. Muir, about some of the questions that perhaps inappropriately I was asking Amicus about what is the accommodation that you're seeking? It's easier for us to assess the claims of TSA, what would require a fundamental alteration of their program, if we have a sense of how what you're seeking lines up with anything that's currently offered. Why would PreCheck not give you exactly what you're seeking? So PreCheck cannot give me what I'm seeking because I am subject to being put through the advanced imaging technology machine at any time at the TSA's discretion. So PreCheck in no way protects me from the exact situation that I'm trying to get relief from. Am I getting a letter from your doc? So that is not sufficient for TSA. I asked whether you tried. I didn't because TSA does not have to accept any reason at all whatsoever, including a disability-caused medical emergency, for me refusing a pat-down, Your Honor. To get an accommodation, they have to know your condition. Isn't that right? I don't know, Your Honor, because there is no process to get an accommodation from TSA. At the gate, at least, when you're going through the metal detector or the other device or pat-down or whatever, I mean, there's a face-to-face contact. And it's that exact face-to-face contact that I'm here, Your Honor. On August 12, 2018, my condition was the reason for a false threat alarm in my right groin. And since I had already been through it once before on the 9th, I elected to go into a private room. There in the private room, I was desperate to not be touched, Your Honor. And I offered to actually, in the spirit, because I'd read, I think, an Oklahoma TSA case. It said that it's nothing different than a locker room, Your Honor. And so there was two males in there, and I offered to lower my pants so that they could see that I didn't have a threat object. And I told them what had happened a few days earlier. I was desperate, and they refused face-to-face. It does nothing, Your Honor. I have no guarantees whatsoever that they'll listen to me or take a doctor's note or anything like that. Is that incident the subject of any of your prior litigation? Yes, it was, Your Honor. And what happened? The 7th Circuit ruled against you. I can't remember why. I think it's because this court, Your Honor, is the only place where my challenge could be properly heard. I think it was because you filed in the district court, and they said you had to file in the court of appeals. For a petition for review. That's correct. Yeah. Did you ever receive any follow-up emails from the DHS Office of Civil Rights and Civil Liberties after it sent you the letter that you attached to your reply brief, the January 7, 2020 letter? No follow-up. That it was recording your complaint. No follow-up? No follow-up whatsoever, no. And did you ever get a TSA follow-up on the email that you sent? And they said they were assigning your claim to an examiner for review. It was in November 2019, or is that the predicate? That claim was denied. So just to circle back, the accommodation that you're seeking, I think it is the plaintiff's burden to identify the accommodation that you're seeking. What is that? Or range of accommodation. And that's why I brought the statutory challenge, because I don't know if it's an accommodation. I would say that first, TSA is not entitled to analyze data regarding tissue beneath my skin. I'm actually asking about the Rehabilitation Act claim. So I'm setting aside the statutory claim for now. Sorry, it wasn't clear about that. And assuming that you're having a disability that prevents you from participating in the program, which here is the TSA screening program. And then the question is, you know, what's the accommodation you're seeking? Is it reasonable or does it pose an undue burden on TSA? In which case they wouldn't be required to offer that accommodation. Assuming that you, just for purposes of the argument or my understanding of how your position plays out, if we set aside the statutory argument and we're just looking under the Rehabilitation Act, what would the accommodation that you're seeking, assuming that the AIT technology as they're using it is lawful, as they're using it in the general course? I would say I don't want to be arrested for refusing a pat-down at the site of my medical emergency. I don't want to be fined in the TSA court because there's no legitimate reason to refuse a pat-down. So if I'm in a situation where it's the pat-down or another option, I'm going to take the other option because it happened before. I can't let anyone touch me like that again. The other option. Is it metal detector and or even AIT and a private room to do the, as you described, the locker room pant strap? That's it. So what I asked for in November of 2019 was to have all threat alarms at my right groin resolved through visual inspection for the rest of my life. I do not want to be touched there. I cannot be touched there. And that was what I proposed in November of 2019. And is that the only or, I mean, as I read the briefing, there was some suggestion that a metal detector would be your preferred approach. But is that only because the AIT virtually invariably triggers a groin specific? Exactly. It's the focus nature. Whereas, I guess if I went through the metal detector and I had to be pat down, it would be my whole body. And so then in that case, the alarm is not based solely on my disability. It's there and only there. I mean, it's very clear. So I would. I would say they shouldn't be allowed to use that information to raise an alarm in the first place. But if if this court thinks that they're using it lawfully, then I would say. That's why I'm here. It's it's it's really tough. And I understand, like, from the other side, but I can't be touched again like that. And if I refuse, then as there was like pretty troubling to see in the respondents brief, they raised city and county of San Francisco. Whereas like I could see a scenario where I'm very resistant to being touched and local law enforcement is called. And what I took from that case is that, like, they can shoot and kill me. And that's not unconstitutional because there's no clearly defined right against algorithmic discrimination of art of narrow artificial intelligence. That's there's clearly no defined right for that. We're we're this is an advanced technology case. And I think that the court should get it. I just still want to be clear. So you wouldn't you really don't want to go through either scanner. I mean, I understand that I have to I have to be screened in order to to get on the other side of the sterile area. Yeah. So which screener is that the A.I.T.? Well, here's what I'm happy to go through either one as long as they don't use my health information regarding human tissue beneath my skin as the predicate for raising a potential threat alarm at my right groin. And when I'm not symptomatic, I can go through the A.I.T. It's only because the software artificial intelligence software misidentify. It can't it doesn't know anything. It does. It just it's its contour pattern and shape. And it's algorithmic and flags that it is an anomaly. So I guess what I'm asking, then, is, for example, when Judge Randolph asked about the letter from the doctor that becomes very explicit, you hand that over to the TSA officer. You still go through the appropriate screening mechanism that you had this letter. The scanner alerts directly to that area, but you also had the letter. So the scanner matches up with the letter. Then you go to a room. Allow the visual inspection and then the three of those instances, letter scanner, visual inspection gets you through. Is that sufficient? I don't I think you can ask the government, but I don't I don't think it is. I'm asking you. We're still from you. Yeah. As an accommodation. You know, matches up with the scanner. I don't think that would fly with them. That would be great. That would be great for me. If it was that easy, your honor, then I'd go three hours early and I would leave enough time and that would be great. Yeah. OK. But even on something like that, potentially, that might be something that has to be developed through the trial court or an order or, you know, that this record gives us that because you don't have the doctor's letter. You have, you know, certain information that you're telling us about. But that sounds very specific. And you're telling us sometimes it alerts, sometimes it doesn't. You know, sometimes you're symptomatic, sometimes you're not. That's correct. And it only works when I'm symptomatic solely because I'm symptomatic. OK. Otherwise, I could I could get right through like I did on June 6th and June 9th, 2019. Were you able to fly to go ahead to drive? OK. But you also understand, you know, when we're looking at the undue hardship burden, this whole screening process is what TSA would argue is most effective, least intrusive in terms of detecting metal and nonmetal, you know, without physical contact for any person who is going through that issue. That's the reason why they chose this particular methodology. Yes. And I would say if they had followed the statutory language. And what I would say is what I really want is a final review of that threat, potential threat or alarm anomaly flag by a human being. Because, you know, as I point out in the briefs. But are you asking a review of the final rule or asking for an accommodation for you? For me, when that when that data is flagged, when my when my screening data is flagged by the algorithm, if it's at my right groin, I think the only way for the Rehabilitation Act to apply is to have a human being making the call on whether, you know, it's an anomaly or not, because software doesn't know what the Rehabilitation Act is and it can't be trained in it. Only only people can be. So just to wrap up my understanding of what the. The accommodations range of accommodations are that you you would be OK with the metal detector, in part because, in your view, you would take the risk that it will alarm on metal and that they will pat you where there might be metal. But that would not be the sensitive area of your hernia. And therefore, that to you seems like a reasonable accommodation. Am I right? I mean, those seem like good odds because there's it's completely human tissue and it's completely beneath the skin. OK, good enough. Thank you. So we will hear now from Mr. Wellman. Thank you, Mr. Good morning, your honors. My name is Joshua Waldman from the Department of Justice representing the respondent TSA. TSA's rule is not arbitrary and capricious. TSA expressly acknowledged and replied to comments from travelers with disabilities who objected to A.I. Or pat downs that the petitioner or those commenters didn't get the answer that they might have been hoping for does not make the rule arbitrary. Capricious does not mean that the agency failed to respond to those comments. TSA also reasonably explained why some passengers are not primarily screened by I.T., for example, because they are low risk passengers who have gone through the pre-check procedures or because they are categorically ineligible for a I.T. Who is who is in that latter category? So, for example, those would be people who could not stand or raise their arms in the required position for a I.T. Those would also include people who had like a service animal or a service dog. It would also include people who have an oxygen concentrator that can't be removed or people who had to be accompanied by another adult, for example, someone with dementia or autism who could not be separated from their companion. And and how so those people go through a metal detector. Most of them would go through the metal detector. Some of them would not. For example, if you're someone who can't stand because you're in a wheelchair where they're not going to direct you to the metal detector because the wheelchair would just set off the metal detector. So those people, as the rule said, people who can't stand in the required position would go through a pat down as opposed to the metal detector. So another category which you triggered had a friend actually was a federal district judge in the South. He couldn't go through a metal detector because he had shrapnel from World War Two. Someone like that. And that was similar to the sky case in the First Circuit. If you opt into the map to it, you can opt into a I.T., for example, even if you were going to otherwise go through the metal detector. So if you had pre-check, you could just say, you know, I prefer to go through a I.T. and that would be fine. And it's not obviously a security concern because the I.T. is better from a security perspective for all the reasons stated in the rule, which is that it detects both metallic and nonmetallic threats, which is all what the technology is about and what Congress directed TSA to be sure to check for. Some of the conditions that you just finished listing are not self-evident. And seeing eye dog, for example, you wouldn't necessarily know. Well, maybe because the person would be blind and that's why they knew. But some of those other conditions are not self-evident. Is there some sort of a certificate that TSA issues containing the information that would entitle the person to skip the artificial intelligence screening? Not the latter part of what you said. There's nothing that you can say that like certify a medical condition that gets you out of what would be the otherwise applicable security screening. But you can fill out a form. And there was some reference to this earlier, that just if you have a medical condition that you'd like the officers to be aware of, but you don't feel comfortable or for whatever reason you don't want to talk about that out loud, you can write it on the form and it's a recognized form and the person would understand it, for example. So how does that work with somebody who can't lift their arms, let's say. And they don't want to say they fill that out. The person looks at it and they say, oh, you can go through the metal detector. Their officer does have discretion in that example to do that. Sometimes there's outward signs. But I do want to actually emphasize a point that you said, Judge Pollard, about it sort of being obvious to the person. And while that is a factor, there's really something antecedent and much more important, which is that someone who, for example, can't raise their arms or someone with a service animal, the AIT won't function and it won't be able to get an image that can be analyzed by the software. And so it's not as if the person can go in and get scanned anyway. What would effectively happen is the machine would say they can't do a scan, as opposed to Mr. Muir is not in that category, whether it's readily apparent or not. It can be scanned. It's really not disputed in the record. I think we're partly asking what the different regimens are, as well as how how a person becomes eligible. If you come up and you have a service animal, do you need to have a card? Do you need to have a letter? Do you need to have any communication or do you just show up? And when and they say, oh, and they put you in a line that goes through a metal detector? Will they not even go through a metal detector? You get a pat down. No, you would go through the metal detector. And I believe with a service animal or a pet, you would get a swab of the hands as well with the explosive trace detection. The animal would get its own screening as well, as well as any equipment. I'm sorry. The person does the individual get a full pat down? Not routinely. No. In that situation. Why not? Why not? When you unless everybody needs to be screened. And my sense is that for nonmetallic explosives, the metal detector isn't enough. So you go through and you you do a hand swab for explosive traces. And you just do the metal detector and that's it. Right. Yes. Now, you have in the record and I'm not going to discuss the details here because it's SSI, but you do have in the record all of the various procedures under the standard operating procedure. And it's there are nuances there that I can't sort of get into here. But you might want to read that record as well. But there are. You know, the TSA obviously has to. Well, in addition to having security concerns, manage the flow of the security checkpoint and if they had to routinely pat down people who didn't alarm, I think that would seriously impede that part of its performance. So if Mr. Muir and if I gather you can travel with a small pet, a non-service animal. Yes. TSA does not distinguish between a service animal and a pet consistent with other non-discrimination rules, which in which the government is not supposed to insist on certification that the animal is certified. Mr. Muir would get a travel pet. That would be that would result. It sounds like that would resolve his. Sure. Just the same as if he applied for pre-check. And was pre-check. Is it right that you always go through a metal detector with pre-check or do you go sometimes through AIT? Well, TSA in its rulemaking did reserve the right in particular circumstances to direct everyone through AIT, whether you pre-check or not, based on particular security circumstances. Or I could imagine a situation in which the metal detectors were all non-functioning. And so we sent everyone through AIT. But as a routine. Non-functioning than the people with the pets and the people who can't raise their arms. They still need something in those situations. I don't know what they would do, particularly if like all the machines broke. I assume they would probably do more pat downs or try to direct people to other security lines. I honestly don't know that hypothetical what would happen. But to answer your question, as a routine course, people with pre-check would go through the metal detectors unless as they can, they can opt to go through AIT or they can opt for a pat down if they prefer that, too. But as a routine matter, they would go through the metal detector. And our point is, if if that's what the petitioner is asking for. And even listening today, I'm still a little bit confused on what exactly that is. And there seems to be some disagreement or maybe not complete alignment between the petitioner and the amicus. But if the request is for going through the walkthrough metal detector, there is an existing program pre-check that petitioner can apply for. And if approved and millions of Americans have been approved, he would just get the option of primarily going through the walkthrough metal detector. Now, it is the case that just because you go through the metal detector doesn't mean that you're exempt from pat downs. There could be an alarm. You could be pulled out randomly as anyone pre-check or not could be for a pat down. So we can't if we can't guarantee that that won't happen. But that pat down is for either metal or random. That's correct. OK, yes. And I've been patted down many, many times. I mean, obviously, it's not in the factual record, but it's not typically in the groin area when you come through a metal detector and there's an alarm. Well, I don't think that that's right. My understanding is that when you go through a walkthrough metal detector, if it alarms, they don't know where on on you the metal is. So they have to do everything, including like the full body. And in fact, that was the claim that was the issue that was raised in the sky case in the First Circuit, which is that petitioner had wanted a more targeted pat down in the first circuit. Right. And the First Circuit said even that would not be that would fundamentally alter TSA security screening. And that proposed accommodation was rejected by that court. What about someone who can't lift their arms? They walk through the metal detector. And this may be I know that the standard operating procedures. March through some of this, but it wasn't entirely clear to me in some cases, if you go through the metal detector. First of all, how do they know you're someone who can't lift their arms? You have to say you say often there are outwards signs like, you know, the person is showing you, you can see visually. You know, I just think of like John McCain or Bob Dole, sort of somebody you can physically see. But it's not always the case. But the person would would sort of communicate that they can't do that. And then the officer would then have discretion to say, OK, you can go through the walkthrough metal detector. And then even if it doesn't alarm, does that person get a pat down? No. My understanding is that person would not get a pat down if they if the metal detector did not alert. Unless, for example, they were pulled out for a random random selection. And our point as far as the Rehabilitation Act is, if that's what you want, then just you can apply for precheck and you would get exactly that same treatment. So if that's the accommodation we're talking about, there's an existing way to do it. And our view is if that's available to the petitioner, there's no sound basis for the court to order some other kind of accommodation. That would be more detrimental to TSA security screening program when this existing mechanism is available. And again, that was the exact holding of the First Circuit in RISC-I, which said if you wanted if the petitioner wanted what she wanted, she could just get precheck in that. And she did. And as that system expanded, she would get exactly the type of screening that she was looking for. And for that reason, they said we're not going to require a different accommodation, which would be for TSA to create a system of medical documentation and verification so that they could present that at the airport. There's no reason to do that. And I think that's particularly so when we're talking about an individualized claim here for one person. Speaking of the individualized act, your briefing somewhat persuasively says, look, we we should have had administrative proceeding below. But when you look at the documents, when you look at the regulation, when a person submits a complaint, the. I'm just missing the acronym, but the, you know, civil liberties CRCL is under an obligation to investigate, make findings, affecting conclusions of law, description of a remedy for each violation found notice of right to appeal. None of that was done when Mr. Muir made a complaint to CRCL. And so why is there not a futility argument or should we remand and say, can you actually do the thing that the regulation says you're supposed to do? I would let me address that in several parts, one that specific and then the broader question on this specific. I agree, and I reached out to CRCL through agency counsel, and the answer is that this was an error that it should have been investigated at that point. And it wasn't, I will say, just as it relates to this case, the complaint that was filed was not about the incident. That is the subject of the petition for review in this case. Yes. And also, it was on its face and untimely administrative claim that came. You have to file it within 180 days. It was filed more than a year after the incident. But all that aside, we are not making an affirmative argument here that you cannot reach the merits because of a failure to exhaust administrative remnants. We're not making that claim here. We only brought it up to make the point that I think this court is making here, which is that there's a lot of unknowns about the facts of this case. How often the petitioner has a situation in which A.I.T. would alert? Is it sometimes, always. Occasionally, frequently. What can be done about it? Exactly what he wants. There could have been a range of options and none of that was explored and presented on a record. We're just here on a petition for review and we have very few concrete facts about that. Given that, what is what are you suggesting? Well, what we think the proper answer here is petitioner should just apply for a pre-check if that's what he wants. And the court should not order any additional accommodation. He's entitled to get that if that's what he wants. If we're unclear about whether that is satisfactory, it's much more intrusive background. Someone who can't raise their arms doesn't require that. So if there's a way for him to be in, I mean, it sounds like what you're saying and to some extent what Mr. Muir is saying is like the standard thing in a in a rehabilitation act situation. There should be some back and forth what's possible, what's easy, what's not an undue burden and what would work for you among the non burdensome options. And if we thought this that there's not a categorical reason to dismiss or grant this case, what would you suggest we do? What I would suggest you do is you would say on this record before this court, we do not see any basis to order an accommodation under the Rehabilitation Act when pre-check is available and appears based on the record before us to give him the relief that he wants. But if there's something beyond that, that he wants now or in the future, he's free to file precisely that kind of claim either directly with TSA or CRCL. And there can be back and forth. And this court would expect TSA to do the investigation that CRCL erroneously did not do before. And I think you could decide the case on that basis. But then you would have to go do a whole new case or you have to go try to travel again, try to go by air. I mean, if we were to remand based on he wasn't required, given his past experience to do the administrative thing, but it'd be a good idea to do it now. I mean, I think it would be within your authority to say, go back to the agency and have that back and forth without him having to file something new. I mean, it's not like there's a filing fee for that, but I don't think that we have a preference between saying, go write a letter, Mr. Muir versus agency, go back and talk about it. But I thought you were saying, deny this case and let him in the future file a new one. And well, it seems a little when the when the administrative process was apparently not fruitful in this very way. Well, with with respect to the claims under the APA statutory authority, I think that you would. I'm bracketing this. Okay. But with respect to the Rehabilitation Act, I think you would. I don't know whether you need to have a disposition of denied or I mean, you I don't think you would grant the Rehabilitation Act claim because we don't if there's a mystery over exactly what we're asking for. But if you say we don't really know and there's a range of options and go back and discuss it with the agency, I think we'd be fine with that disposition. But I do think it would be helpful to sort of have some guidance from the court on exactly. What you think appropriate accommodations wouldn't wouldn't be depending on what they're asking for. So if what they're asking for, we would ask you to say if what's being asked for is the option to go through a walkthrough metal detector, that the answer to that is the government. It doesn't have to do anything more and provide what it already has, which is the precheck option. But if he's asking for something else, which is, for example, the ability to go into a private room and and disrobe. I mean, I think there's lots of reasons why we wouldn't want to do that. I don't know that they're security based, but we haven't really considered that. So I think we could. But I would sort of like to know whether that's something that's the court considers to be an option. Or if the answer is the only thing that's really on the table is you have to be exempt from a pat down under any circumstance. I mean, it's our view that under no circumstances can we agree to that. One of the problems with this case is it's that we it's on direct review instead of before a district court where it could be an evident. It could be and should be evidentiary hearings dealing with this question, whether an accommodation is effective. It is a material fact that has to be established by the plaintiff. And all we have are pleadings. We don't have any evidentiary findings or any any of the sort. That that's right. And I think those could be gathered in in an agency proceeding. And I think that was sort of our point. And I think the only question is whether you would if you decided that what was required was that kind of a proceeding and you would remand for that. We would just ask that the court provide some explanation about sort of what's on the table and what you view about those things. I think that would be helpful for all the parties to know. I do also want to bring up one point just so that everyone is sort of, I guess, aware of it. I'm not quite sure what the answer is, but what happens after that proceeding with respect to future federal court proceedings? If the petitioner is unhappy with the answer given by TSA and we are here on a petition for review and it's not 100 percent clear to me whether that's really the appropriate way to bring a challenge to agency administrative procedures under the Rehabilitation Act. I understand that in the first circuit thought that that is how you bring it. Bring the case, although a careful reading of that case shows that neither party disputed it. And the court sort of, for lack of a better term, kind of glossed over the issue a little bit. And then subsequent district court cases in Mr. Muir's cases have held that Rehabilitation Act claims should go directly on a petition for review. And for some of the reasons that Judge Randolph said, I'm not sure that that's the correct avenue that maybe a district court would be better, would better handle the fact finding in that scenario. And it's also a claim splitting problem where there's a challenge to the statutory. I mean, given the combination of challenges in this case, one, you know, that the statute authorization for the standard operating procedures comes directly. Rehabilitation Act goes separately. Right. And I understand that I understood the premise of my argument was that you would on this petition for you dispose of those claims on the merits, the APA claim. And the only thing that would be left would be the Rehabilitation Act claim. And if that's the case. I just want to sort of be clear that it may be the case that the way you proceed after any future administrative proceedings is through district court rather than a petition for review. And the reason I want to make that point clear is because in prior cases involving Mr. Muir. The district courts have held that he should bring that case in there in the court of appeals, and they did so based on sky, which I think did not maybe thoroughly examine the issue. And so I think that's an open question, and I don't want to be accused of sort of sandbagging later. So I just want to put that out for the court's awareness that it's not necessarily the case that if you were to remand for administrative proceedings that it necessarily returns to you on the same petition for review. And I just want to be candid about that issue. Okay, that's helpful. Thank you. If there are any further questions, I'm happy to answer them. Okay, thank you. Satisfied. Now, in terms of rebuttal, did Mr. Weaver reserve any rebuttal time? Your Honor, it's just a couple of quick points on our bottle. With respect to the rehabilitation, I claim the government's only argument that it is made is that it would be an undue burden to provide an accommodation to Mr. Muir. We've had a lot of discussion today about what precisely the accommodation is, and I appreciate the court's concern about that. But in the briefing, at the very least, the accommodation that Mr. Muir is in need of is access to the walk-through metal detector as opposed to the AIT machine, because that will significantly reduce the chance that he is subjected to a targeted painful pat-down. And I would just emphasize that the government's rationale for why that type of accommodation would be an undue burden and the government's rationale for why the standard operating procedures are not arbitrary and capricious is completely hollow for a lot of the reasons that we've discussed today. All the categories, or for many of the categories of individuals who are given sort of access to walk-through metal detectors as the primary option, the notion that there's some sort of visual indication necessarily indicating that they legitimately have whatever the problem is that causes them to go through that machine is wrong. It's not the case that, you know, for individuals who, for instance, cannot raise their hands, that is something that, you know, is not, you know, anyone who is trying to get through and access a walk-through metal detector could act and pretend like that was the case. There's no way for a TSA agent to verify that there's a medical problem that necessitates putting them through the walk-through metal detectors. So, Amicus would just emphasize that I do think the reasoning on both the question of would primarily accessing walk-through metal detectors constitute a primary burden, and then is the denial of Mr. Muir and individuals in his circumstances of access to walk-through metal detectors as the primary screening mechanism, whether that's arbitrary and capricious, I think the government's rationale on that is illogical and violates both the arbitrary and capriciousness standard, and then also the Rehabilitation Act. We don't know how many people are similarly situated, how many people who use the airports are similarly situated to Mr. Muir, do we? No, Judge Barrow, there's nothing about that on the record. All right. Thank you. Thank you. And did Mr. Muir reserve rebuttal time? You don't need to take it, but if you want to. I would just say thank you, Your Honors, for granting me permission to appear in front of you today, and I'll stand on my briefs. Thank you. And Mr. Weaver, you were appointed by the court to represent the interests of appellant in this appeal, and the court very much thanks you for your able assistance. Case is submitted.
judges: Pillard; Childs; Randolph